```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```
_____

| | |
|---|---|
| **KENDARION D. JENNINGS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 21-02468-JTF-tmp |
| | ) |
| **SANTANDER CONSUMER USA,** | ) |
| | ) |
| Defendant. | ) |

_____

### REPORT AND RECOMMENDATION
_____

Before the court is *pro se* plaintiff Kendarion Jennings's complaint against Santander Consumer, USA.[1] (ECF No. 1.) Because Jennings is proceeding *in forma pauperis*, the court must screen the complaint pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth below, the undersigned recommends that Jennings's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I.   PROPOSED FINDINGS OF FACT

Jennings's claims all arise from a transaction with Wolfchase Nissan on January 7, 2021. On that day, Jennings purchased a 2021 Nissan Altima on credit, pursuant to a Retail Installment Sale Contract. The contract provided for a 72-month repayment term at

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

17.62 percent APR and a $699.45 monthly payment beginning on February 6, 2021. (ECF No. 1-3 at 8.) The transaction was financed through Santander Consumer USA, Inc., which serves as the "indirect lender and assignee of the Contract." (Id.) The contract indicated that Jennings paid $3,000 down for the car and listed his primary address as 1352 Tuscumbia Road in Collierville, Tennessee. (ECF No. 1-2 at 8.) It also prominently explained that there is "no cooling off period." Once signed, the contract could not be canceled unless both parties agreed or other legal cause existed. (Id.)

Two days after the sale, Jennings sent an "invoice" to Santander, claiming he was owed $61,915.99 for "1 federally protected consumer rights violation under 15 U.S.C. 1640." (Id. at 7.) Along with this invoice, Jennings sent numerous letters, some notarized and others not. These included a Cease-and-Desist letter demanding that Santander "zero out the balance" on his debt pursuant to 15 U.S.C. § 1692c(c)(2), (id. at 3), a cover letter alleging a breach of 15 U.S.C. § 1605 and that his contract was "consummated by fraud," (id. at 2), and an "affidavit of truth" claiming that "pursuant to 15 U.S.C. § 1635" he has the right to rescind any consumer credit transaction that finances a "dwelling," (id. at 4-6). Jennings also attached other, undated documents that were presumably sent to Santander. These included a second Cease-and-Desist letter, (ECF No. 1-3 at 1), and a second

affidavit of truth that alleged violations of 15 U.S.C. §§ 1692b(5), 1692c(b), 1692c(a)(1), 1692d(2), 1692d(1), 1692e(1), 1692e(8), 1692e(2)(A), and 1692j(a). (Id. at 2-3.)

Santander responded on February 4, 2021. (ECF No. 1-4 at 9.) The bank notified Jennings that his account was placed into cease-and-desist status, explained the contract terms, and declined to release the lien. (Id.) At some point after receiving this letter, Jennings submitted a claim with the Consumer Financial Protection Bureau regarding his account. (ECF No. 1-5 at 1.) Santander responded on April 14, 2021, explaining that Jennings was in default on the loan, that he had been notified of this on March 19, 2021, and that the Fair Credit Reporting Act required that they report the account to the four major credit reporting agencies. (Id. at 10.) They sent a similar letter on June 7, 2021, in response to further letters from Jennings. (Id. at 1.)

Jennings then filed his complaint on July 12, 2021, attaching multiple exhibits detailing the facts above. (ECF No. 1.) He seeks $250,000 in damages from Santander for refusing to refund his purchase, and for "late fees" of $1,000 each day they refuse to do so. (Id. at 5.) The complaint also alleges violations of 15 U.S.C. § 1681a(d)(2)(B) for sharing information about the loan with consumer credit reporting agencies. (Id. at 4.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Standard of Review**

This court is required to screen *in forma pauperis* complaints and must dismiss any complaint, or any portion thereof, if the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i-iii). To avoid dismissal for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011). Even so, *pro so* litigants must adhere to the Federal Rules of Civil

Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

**B.   Claim Under 15 U.S.C. § 1635**

Jennings's first claim stems from the alleged failure of Santander to respect his alleged right under § 1635 to "rescind a transaction" within three business days. 15 U.S.C. § 1635 "established a right of rescission for any loan transaction in which the borrower's principal dwelling is used as security." Weeden v. Auto Workers Credit Union, Inc., 173 F.3d 857 (Table), at *4 (6th Cir. 1999). This section of the Truth in Lending Act does not apply to "the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling" and is designed to only apply to property used as a principal residence. In re Fox, 391 B.R. 772, 776 (N.D. Ohio 2008); see also Barrett v. JP Morgan Chase Bank, N.A., 445 F.3d 874, 875-76 (6th Cir. 2006).

Jennings's claim to the right of recission fails. This section applies "when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling." Barrett, 445 F.3d at 875 (quoting Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998)). Jennings does not allege that the car serves as his

principal place of residence, despite attaching a legal definition of "dwelling." (ECF No. 1-2 at 5.) His repeated listing of 1352 Tuscumbia Road as a mailing address suggests that it serves as his primary residence instead.² Further, the loan in question served as the "*first* lien against [property] to finance [its] acquisition." Copley, 423 F. Supp. at 984 (emphasis added). Even if the Altima could somehow qualify as a "dwelling," the contract here nevertheless indicates that the loan financed the initial purchase of the car. (ECF No. 1-2 at 8.) Under the facts as plead, this section of the Truth in Lending Act is simply inapplicable to Jennings's contract. Because of this, no claim is stated under § 1635.

**C.   Claims Under 15 U.S.C. § 1681**

Separate from the underlying transaction, the complaint alleges that Santander violated 15 U.S.C. § 1681a(d)(2)(B) by "furnish[ing] accounts on [Jennings's] consumer credit reports." (ECF No. 1 at 5.) This section primarily provides definitions of terms used throughout laws regulating consumer credit reporting

---

²It is doubtful that a standard passenger car could ever be covered by § 1635. See McCray v. Jefferson Chevrolet Company, Inc., No. 17-cv-12058, 2018 WL 1964674, at *4 (E.D. Mich. Apr. 26, 2018) (§ 1635 is "a section about home mortgages"); 12 C.F.R. § 226.2(a)(19) (defining dwelling as "a residential structure that contains one to four units," including "an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence.") (implementing regulation of the Truth in Lending Act).

agencies. 15 U.S.C. § 1681a(d)(2)(B) states that "any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device" is not a "consumer report."

This section is merely definitional. Jennings seems to suggest that this section "excludes any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device [] from being included in any consumer report," but this misreads the statute. (ECF No. 1 at 5.) The provision here does not govern what can be provided or furnished on a consumer report, but instead defines what a consumer report is and is not. By applying these definitions, courts determine whether a specific document or report falls under the handling and disclosure requirements of the Fair Credit and Reporting Act. See, e.g., Bickley v. Dish Network LLC, 751 F.3d 724, 728-29 (6th Cir. 2014). A different provision provides a list of information that may not be included in a consumer report, and Jennings's loan here does not fit within those excluded categories. See 15 U.S.C. § 1681c (preventing the inclusion of old bankruptcy cases, civil judgments, medical information, and other time barred information). Further, it seems unlikely that § 1681d(2)(B) even applies to the loan in question. The loan here is a car loan and not related to a credit card or similar device. Even construed liberally, there is no specific allegation that Santander violated

the Fair Credit and Reporting Act. Because of this deficiency, Jennings fails to state a claim under § 1681.

**D.   Claims Under 15 U.S.C. § 1692**

Jennings offers one final set of claims: alleged violations of 15 U.S.C. § 1692. This subchapter relates to debt collection practices and places restrictions on "debt collectors," who are defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collet, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. The law was explicitly designed "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute differentiates between debt collectors and creditors, with creditors defined as "any person who offers or extends credit creating a debt or to whom a debt is owed." Id. "A creditor is not a debt collector under the FDCPA." Joyner v. MERS, 451 F. App'x 505, 507 (6th Cir. 2011). The law further exempts assignees of non-defaulted debts from its controls on "debt collectors." Id. (citing Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir. 1996)).

Santander is not a debt collector under this statute but is instead a "creditor." They extended the credit on the car and are owed that debt. (ECF No. 1-3 at 8); Craig v. Park Fin. of Broward

Cty., Inc., 390 F. Supp. 2d 1150, 1154 (M.D. Fla. 2005) (finding the financing bank of a car loan to be a creditor under the statute). Even if Santander were not involved in the debt's creation, they would clearly be an assignee of the loan from Wolfchase Nissan, which was not in default upon transfer. (ECF No. 1-4 at 9) ("Santander Consumer USA, Inc. is the indirect lender and assignee of the contract.") Under the facts alleged, § 1692's restrictions do not apply to Santander here, and thus no claim is stated.

**E.   Other Claims**

Jennings also alleges that the initial loan was entered into under "fraud." (ECF No. 1-2 at 2.) Jennings's allegation of fraud is wholly conclusory. He provides only a sentence asserting that fraud occurred, and he provides no facts to make the claim plausible. Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

Finally, Jennings claims that Wolfchase Nissan is an improper party to the contract.[3] These claims rest on his assertion that corporations are "non-living soulless entit[ies]" that cannot be

---

[3] In accompanying documentation (not the complaint itself), Jennings equates this claim with his fraud claims. (ECF No. 1-2 at 5) ("this contract was initiated by fraud simply because this firm cannot stand in the court of law under the penalty of perjury and it wasn't singed by the seller creditor").

party to any agreement, cannot sign contracts, and which "cannot have attorneys represent them in the court." (ECF No. 1-2 at 5.) However, The Truth in Lending Act specifically contemplates corporations as persons. See 15 U.S.C. § 1602(d)-(e).[4] To the extent his claims deal with the metaphysics of a soul and its effect on contracting, under 28 U.S.C. § 1915(e)(2)(B), the court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." Bumpas v. Corr. Corp. of America, No. 3:10-1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (dismissal warranted where the claim is "so insubstantial, implausible . . . or otherwise devoid of merit as not to involve

---

[4] The undersigned notes that Jennings himself takes advantage of this definition by defining himself as a "either a person or organization." (ECF No. 1-2 at 5.)

- 10 -

a federal controversy") (internal quotation marks omitted). Here, Jennings makes baseless, purely philosophical assertions that have no basis in law nor effect on contacting. Dismissing these claims for lack of subject matter jurisdiction is appropriate.

### III.   RECOMMENDATION

Based on the above, it is recommended that the complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 21, 2021
Date


**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**